# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RAYMOND WINTSON | : | |
| MCLAUGHLIN and | : | |
| Shakir Ra-Ade Bey, | : | |
| | : | |
| Plaintiffs, | : | NO. 3:09CV1844(MRK) |
| | : | |
| v. | : | |
| | : | |
| CITIFINANCIAL AUTO CREDIT, INC., | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OF DECISION

Defendant, CitiFinancial Auto Credit, Inc. ("CitiFinancial") has filed a Motion to Dismiss [doc. # 48] this case in its entirety.  For the reasons that follow, the motion is granted.  However, in light of Plaintiff's *pro se* status, he will be granted one last opportunity to amend his complaint to state a viable claim for relief – though the Court grants this opportunity with reluctance and some important caveats, discussed at the end of this opinion.

## I.      Factual Background & Procedural History

The *pro se* Plaintiff has identified himself as "Grand Sheik Shakir Ra Ade Bey, a Divine Public Minister in the Moorish Holy Temple of Science of the World and the Moorish Divine and National Movement, a religious body politic." *See* Pl.'s Judicial Notice/Declaration of Status [doc. # 39] at 1.  Although he concedes that he is not an attorney, Mr. Ade Bey states that speaks on behalf of one RAYMOND MCLAUGHLIN (always presented in all-capital letters), against whom Mr. Ade Bey purports to have a $100 billion claim by virtue of a security agreement filed on the East Haven land record.  *See id.* at 1.

If the reader has not already discerned, this case has some unusual aspects (at least in this Court's experience).  Contemporaneously with the filing of this opinion, the Court has filed a

1

decision in another case brought by Mr. Ade Bey on behalf of RAYMOND MCLAUGHLIN. *See Shakir Ra Ade Bey v. CitiMortgage, Inc.*, No. 3:09CV1762 (D. Conn. June 11, 2010). Those seeking additional background information regarding the nature of Mr. Ade Bey's relationship with RAYMOND MCLAUGHLIN and the theories of law that appear to underlie Mr. Ade Bey's claims in both lawsuits are directed to the Court's opinion in that case, as the Court will only summarize here that information necessary for the resolution of CitiFinancial's Motion to Dismiss [doc. # 48].

In short, as part of a religious conversion, Mr. Ade Bey has disclaimed the use of a prior moniker, "Raymond McLaughlin," and now goes by "Shakir Ra Ade Bey." Mr. Ade Bey has explained that "[t]he Moorish American Religion, ecclesiastic laws, and culture require[] the use of aboriginal/indigenous free descent appellation [to be] in tune with [one's] ancestors." Pl.'s Judicial Notice/Declaration of Status [doc. # 39] at 1. Mr. Ade Bey nonetheless purports to have a power of attorney for RAYMOND MCLAUGHLIN, *see id.* at 2, and initiated this lawsuit on behalf of that entity on November 13, 2009. *See* Compl. [doc. # 1]. While the original Complaint named other individuals and entities as defendants, Mr. Ade Bey amended his Complaint on March 1, 2010, choosing to proceed against only CitiFinancial. *See* Am. Compl. [doc. # 45].

The factual allegations of the Amended Complaint are relatively straightforward. This lawsuit is related to an "alleged" automobile loan of $35,114 procured by either "Raymond McLaughlin" or RAYMOND MCLAUGHLIN on or about December 20, 2005 from Fifth Third Bank. *See id.* at 3 ¶ 1. Approximately three weeks later, a second loan was secured from Synergy Bank, which was used to pay off the first loan. *See id.* ¶¶ 2-3. Shortly thereafter, this second loan was apparently assigned to CitiFinancial, which sent a notice to Plaintiff indicating

that all future payments should be forward to it.  *See id.* ¶ 4.  Approximately two and a half years later, on or about June 1, 2009, the Amended Complaint alleges, the Plaintiff, "in accordance with Public Law 73-10, House Joint Resolution 192, and the Uniform Commercial Code," sent CitiFinancial a negotiable instrument for the remaining balance of $14,000.  *Id.* ¶ 5.  CitiFinancial was allegedly given three days to return the negotiable instrument if it was defective or refused, *see id.* ¶ 6, which it apparently did not do.  Plaintiff alleges that CitiFinancial has continued to send "presentments" for payment, and apparently sought to repossess the vehicle in question sometime in November 2009.  *See id.* ¶¶ 7-8.

On the basis of these facts, Mr. Ade Bey's Amended Complaint asserts eight claims against CitiFinancial.  Five of the counts allege violations of various statutes: the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1961-68; the federal Truth-In-Lending Act (TILA), 15 U.S.C. §§ 1601 *et seq.*; the National Bank Act of 1864; the Uniform Commercial Code (UCC); and the Fair Debt Collection Practices Act (FDCPA), 15 USC § 1692.  *See id.*  Two of Mr. Ade Bey's claims – fraud and defamation – arise under the common law, while the last, entitled "Deprivation of Rights," appears to assert a claim for the violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution.  *See id.*  The Amended Complaint demands as relief $50 million dollars in damages, payable in pure silver and/or Federal Reserve Notes; the elimination of all negative information CitiFinancial communicated to credit reporting agencies; an order that CitiFinancial validate the debt, produce the contract, release all liens on the automobile, convey clear title of it to Mr. Ade Bey, and produce the negotiable instrument Mr. Ade Bey sent for payment; an order that CitiFinancial "prove for and on the public record that they lent anything of substance to Plaintiff;" and an injunction that

CitiFinancial "cease and desist[] forever [its] attempts to collect anything from the Plaintiff, regarding this matter, whatsoever."  Am. Compl. [doc. # 45] at 15-16.

CitiFinancial's Motion to Dismiss argues that none of the counts in the Amended Complaint asserts a viable claim upon which this Court could grant relief.  *See generally* Def.'s Mem. in Supp. Mot. to Dismiss [doc. # 49].  CitiFinancial has also filed a Counterclaim for breach of contract, alleging that the Plaintiff has defaulted on the loan agreement in question and owes CitiFinancial approximately $14,000.  *See* Def.'s Answer & Counterclaim [doc. # 29].

## II.      Standard of Review

When considering a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff.  *See Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008).  Mr. Ade Bey's assertions to the contrary, however, this does not mean that the Court must accept as true every factual statement in any filing he submits; rather, the plausibility of Mr. Ade Bey's claims are measured by the allegations contained in the operative complaint – here the Amended Complaint dated March 1, 2010 [doc. # 45].  In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 95 (2d Cir. 2009).  Two working principles underlie the Supreme Court's plausibility standard.  *See Iqbal*, 129 S.Ct. at 1949.  "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1949).  The Rule 8

pleading threshold "does not require detailed factual allegations," but it nonetheless requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949 (citation and quotation marks omitted); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010) ("[A]lthough *Twombly* and *Iqbal* require 'factual amplification [where] needed to render a claim plausible, we reject [the] contention that *Twombly* and *Iqbal* require the pleading of specific evidence or extra facts beyond what is needed to make the claim plausible." (quoting *Ross v. Bank of America, N.A.*, 524 F.3d 217, 225 (2d Cir. 2008) (first alteration in original)).  "'Second, . . . 'determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Harris*, 572 F.3d at 72 (quoting *Iqbal*, 129 S.Ct. at 1950); *see also Austen v. Catterton Partners V, LP*, ___ F. Supp. 2d ___, ___, 2010 WL 625389, at *2 (D. Conn. Feb. 17, 2010).

Additionally, while the Court applies the *Federal Rules of Civil Procedure* with some liberality to *pro se* parties, such as Mr. Ade Bey, *see Harris*, 572 F.3d at 72, this does not mean that Mr. Ade Bey is excused from their application altogether.  *See, e.g.*, *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) ("[A]ll litigants, including *pro ses*, have an obligation to comply with court orders, and failure to comply may result in sanctions, including dismissal with prejudice." (quoting *Minotti v. Lensink*, 895 F.3d 100, 103 (2d Cir. 1990) (alteration in original)).

## III.   Discussion

Even construing the Amended Complaint liberally, the Court concludes that Mr. Ade Bey has failed to allege any plausible claims for relief.  As in the other case brought by Mr. Ade Bey, the claims in this case appear to be based on one or more thoroughly-rejected theories about the

characteristics of the American banking system. *See generally Shakir Ra Ade Bey v. CitiMortgage, Inc.*, No. 3:09CV1762 (D. Conn. June 11, 2010). In short, Mr. Ade Bey appears to argue that the promissory note he executed in favor of Synergy Bank was the equivalent of "money" that Mr. Ade Bey created. He argues that CitiFinancial took his "money," deposited it into its own account, listed it as an asset on its accounting ledgers, and then lent Mr. Ade Bey back the money that he had created. Mr. Ade Bey argues that since CitiFinancial did not actually lend him anything, it risked nothing, and therefore acted unlawfully when it attempted to collect on what he contends was a phantom debt. All of Mr. Ade Bey's claims appear to be based upon this particular view of the transaction at issue and the monetary system as a whole.

The Court has already endeavored to explain at some length the rather convoluted nature of these arguments. *See id.* at 11-20. Suffice it to say for present purposes that they have been universally rejected by courts throughout the country for at least the last 25 years. *See, e.g.*, *Torne v. Republic Mortg.* LLC, No. 2:09CV2445, 2010 WL 1904507, at *2 (D. Nev. May 10, 2010); *Barber v. Countrywide Home Loans, Inc.*, No. 2:09CV40, 2010 WL 398915, at *4 (W.D.N.C. Oct. 7, 2009) (dismissing "utterly frivolous" and "patently ludicrous" claims of fraud, racketeering, and conspiracy, and advising plaintiffs that their "tactics are a waste of their time as well as the court's time, which is paid for by hard-earned tax dollars"); *Marrakush Soc. v. New Jersey State Police*, No. 09CV2518 et al., 2009 WL 2366132 (D.N.J. July 30, 2009) (considering 19 consolidated cases raising arguments virtually identical to those here, all filed in the District Court for the District of New Jersey within approximately one year, and discussing similar recent influxes of cases in the Federal District Courts in Delaware and Florida); *Richardson*, 2008 WL 5225824, at *7 (dismissing claims as "patently frivolous and a waste of judicial resources"); *Demmler v. Bank One N.A.*, No. 2:05CV322, 2006 WL 640499, at *3 (S.D. Ohio Mar. 9, 2006)

6

(characterizing such claims as "patently ludicrous" and noting that "these arguments have been repeatedly rejected by every court to consider the issue"); *Carrington v. Federal Nat'l Mortg. Assoc.*, No. 05CV73429, 2005 WL 3216226, at *2-3 (E.D. Mich. Nov. 29, 2005) (recognizing that these theories have been "universally rejected by numerous federal courts"); *Thiel v. First Fed. Savings & Loan Ass'n of Marion*, 646 F. Supp. 592 (N.D. Ind. 1986) (rejecting claims that lender had violated RICO and National Bank Act by issuing loan check in exchange for promissory note, dismissing the claims as frivolous, and imposing sanctions on the *pro se* plaintiffs); *Nixon v. Individual Head of St. Joseph Mortg. Co.*, 615 F. Supp. 898, 900 (D.C. Ind. 1985) (finding the plaintiff's arguments and claims "absurd" and imposing sanctions on the *pro se* plaintiff).

### A.      RICO (Count One)

Count One alleges a violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1961-68.  *See* Am. Compl. [doc. # 45] at 6-7 ¶¶ 1-5; Pl.'s RICO Case Statement [doc. # 42].  "RICO creates a private right of action for '[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter.'"  *Frey v. Maloney*, 476 F. Supp. 2d 141, 159 (D. Conn. 2007) (quoting 18 U.S.C. § 1964(c)); *see also* 18 U.S.C. § 1962 (listing acts prohibited by RICO).  To state a claim under 18 U.S.C. § 1964(c), "a plaintiff must plead (1) the defendant's violation of [18 U.S.C.] § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation."  *Frey*, 476 F. Supp. 2d at 159 (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 283 (2d Cir. 2006)) (alteration in original).  Moreover, "all allegations of fraudulent predicate acts [under RlCO] are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)."  *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004).

The crux of Mr. Ade Bey's RICO claim is that CitiFinancial has attempted to collect an allegedly unlawful debt – that automobile loan. *See* Am. Compl. [doc. # 45] at 2 ¶¶ 4-7. Mr. Ade Bey also argues that CitiFinancial systemically defrauds the "unaware public" by purporting to loan "real money of substantial value" when, in fact, it only lends "credit." *See id.* at 7 ¶ 4. These allegations fail to state a viable RICO claim for at least two reasons. First, Mr. Ade Bey has not alleged that CitiFinancial is part of a RICO "enterprise." Second, he has not alleged that CitiFinancial violated any of RICO's substantive provisions. Either reason is sufficient to dismiss this claim. *See Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999).

Under RICO, an "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "[A] solitary entity cannot, as matter of law, simultaneously constitute both the RICO 'person' whose conduct is prohibited and the entire RICO 'enterprise.'" *Cadle, Co. v. Flanagan*, 271 F. Supp. 2d 379, 387 (D. Conn. 2003) (quoting *Cullen v. Margiotta*, 811 F.2d 698, 729–30 (2d Cir. 1987)). "The Supreme Court has held that the 'person' liable under Section 1962(c), *i.e.* the Civil RICO defendant, must be an individual that is a distinct entity from the RICO 'enterprise.'" *Daigneault v. Eaton Corp.*, No. 3:06CV1690, 2008 WL 2604929, at *2 (D. Conn. June 16, 2008) (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)). Nonetheless, both Mr. Ade Bey's Amended Complaint and his Civil RICO Case Statement allege that CitiFinancial alone constitutes the entirety of the enterprise. *See* Am. Compl. [doc. # 45] at 7 ¶ 4; RICO Case Statement [doc. # 42] ¶ 6. Accordingly, Mr. Ade Bey has failed to allege an "enterprise" within

the meaning of RICO.  *See King*, 533 U.S. at 161; *Frey*, 476 F. Supp. 2d at 159; *Cadle*, 271 F.
Supp. 2d at 387.

More fundamentally, even assuming that Mr. Ade Bey has successfully alleged a RICO
enterprise (which he has not), he has not alleged that CitiFinancial has violated any of RICO's
substantive provisions.  *See Cofacredit*, 187 F.3d at 244.  RICO's substantive provisions make it
"unlawful for any person employed by or associated with" an enterprise engaged in or affecting
interstate or foreign commerce "to conduct or participate, directly or indirectly, in the conduct of
such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).  As Mr.
Ade Bey avers, RICO *does* make it unlawful for "any person employed by or associated with any
enterprise engaged in . . . interstate or foreign commerce, to conduct or participate, directly or
indirectly, in the conduct of such enterprise's affairs through . . . *collection of unlawful debt*."  18
U.S.C. § 1962(c) (emphasis added).  However, in the RICO context, the term "unlawful debt"
has a particular meaning: it must be the result of illegal gambling and/or usurious lending, *see id.*
§ 1962(6), with "usurious lending" defined as lending at "at least twice the enforceable rate," *id.*
The only "unlawful debt" that Mr. Ade Bey alleges that CitiFinancial has attempted to collect is
what CitiFinancial says is due on the automobile loan.  Since Mr. Ade Bey has nowhere
suggested that this debt relates in any way to gambling activity, or that the interest rate on the
promissory note is "at least twice the enforceable rate," he has failed to allege that CitiFinancial's
efforts to collect the debt violate RICO.  *See* 18 U.S.C. § 1962(c).

Similarly, Mr. Ade Bey's conclusory and factually-unfounded assertions that
CitiFinancial committed mail and/or wire fraud in attempting to collect the allegedly-unlawful
debt are insufficient to support a RICO claim.  *See Bridge v. Phoenix Bond & Indem. Co.*, 553
U.S. 639, ___, 128 S. Ct. 2131, 2138-39 (2008); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170,

1175 (2d Cir. 1993); *Kramer v. Lockwood Pension Servs.*, 653 F. Supp. 2d 354, 389 (S.D.N.Y. 2009).

Since Mr. Ade Bey has failed to allege a violation of RICO, Defendant's Motion to Dismiss [doc. # 48] Count One is GRANTED.  *See Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996) ("Any claim under § 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.") (citation omitted), *vacated on other grounds*, 525 U.S. 128 (1998); *see also Thiel*, 646 F. Supp. at 597 (rejecting the claim, among others, that the lender had violated RICO by issuing a loan check in exchange for a promissory note, as the claim was based only on the plaintiffs' "vision of an appropriate monetary system that operates solely on legal tender transactions").

### B.      Fraud (Count Two)

Count Two alleges common-law fraud, *see* Am. Compl. [doc. # 45] at 8-9.  According to the Amended Complaint, CitiFinancial "fraudulently induced" Mr. Ade Bey into executing the promissory note by convincing him, "[t]hrough the fraudulent documents, . . . that [CitiFinancial] was actually lending money when i[n] fact . . . the Plaintiff's Exemption Account was being accessed in order to create and bring funds into existence."  Am. Compl. [doc. # 45] at 9.   In addition to clearly relying on the "Redemptionist" and/or "vapor money" theories, this claim fails because Mr. Ade Bey concedes that CitiFinancial played no role whatsoever in the loan transaction.   Instead, his automobile loan was from Synergy Bank, *see id.* at 3 ¶ 2, who subsequently assigned the debt to CitiFinancial, *see id.* at 3 ¶ 4.  Therefore, CitiFinancial could not have induced Mr. Ade Bey into signing anything.  *See Flemming v. Goodwill Mortg. Servs., LLC*, 648 F. Supp. 2d 292, 296 (D. Conn. 2009).

Therefore, Defendant's Motion to Dismiss [doc. # 48] Count Two is GRANTED. *See Flemming*, 648 F. Supp. 2d at 296.

### C.    TILA (Count Three)

Count Three of the Amended Complaint alleges a violation of the federal Truth-In-Lending Act (TILA), 15 U.S.C. § 1601 *et seq. See* Am. Compl. [doc. # 45] at 9. The basis of this claim is Mr. Ade Bey's allegation that "Defendant failed to disclose that it was not 'lending' anything." *Id.* In other words, Mr. Ade Bey argues that CitiFinancial violated the TILA because it failed to disclose that it was not really lending him "money," but rather, merely credit. While Mr. Ade Bey may believe that lenders should have to provide disclosures that are in accordance with his beliefs regarding, *inter alia*, what constitutes "real" money, the Truth-In-Lending Act requires no such thing. *See Thiel*, 646 F. Supp. at 597 (rejecting claims based only on the plaintiffs' opinions regarding "an unjust system of commercial transactions").

Moreover, Mr. Ade Bey's TILA claim is time-barred, as he failed to bring it within one year of the alleged violation. *See* 15 U.S.C. § 1640(e) ("Any action under [TILA] may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."). Since Mr. Ade Bey has not suggested any plausible ground for equitable tolling, his TILA claim is – in addition to being meritless – time-barred, *see Boursiquot v. Citibank FSB.*, 323 F. Supp. 2d 350, 354 (D. Conn. 2004), and therefore CitiFinancial's Motion to Dismiss [doc. # 48] Count Three is GRANTED.

### D.    UCC (Count Five)

In Count Five, Mr. Ade Bey alleges that CitiFinancial violated Conn. Gen. Stat. § 42a-3-603(b) of Connecticut's Uniform Commercial Code ("UCC"). Mr. Ade Bey alleges that, on June 12, 2009, "[a] Bond in the amount of $14,000 was issued in good faith which allowed the

Plaintiff to stay in commercial honor. The Defendant has chosen to dishonor the Instrument; after it was specifically given three (3) days to return if any defects were found." Am Compl. [doc. # 45] at 12. Mr. Ade Bey argues that "The Defendant cannot demand a certain specie in payment of debt pursuant to [House Joint Resolution] 192 and Public Law 73-10." *Id.*

House Joint Resolution 192, entitled, "To assure uniform value to the coins and currencies of the United States," states that obligations requiring payment "in gold or a particular kind of coin or currency, or in an amount in money of the United States measured thereby" are against public policy, and that U.S. currency is legal tender for all debts. *See* H.R.J. Res. 192, 73d Cong. (1933); *see also Bryant v. Wash. Mut. Bank*, 524 F. Supp. 2d 753, 759 & n.9 (W.D. Va. 2007). Public Law 73-10, enacted in 1933, suspended the gold standard. *See* Pub. L. No. 73-10, 48 Stat. 112, 113 (1933); *see also Johnson v. United States*, 79 Fed. Cl. 769, 774-75 (2007). Thus, Mr. Ade Bey's UCC claim seems to have three parts. First, he offered CitiFinancial a "bond" on June 12, 2009, which CitiFinancial refused to accept. *See* Am Compl. [doc. # 45] at 12. This refusal, according to Mr. Ade Bey, means that the debt is now discharged under Conn. Gen. Stat. § 42a-3-603(b). Therefore, Mr. Ade Bey argues, CitiFinancial cannot demand payment in legal tender. *See id.*

There are at least two flaws with this argument. First, it is well settled that "a tender of payment is not the equivalent of payment itself." *Connecticut v. Lex Assocs.*, 248 Conn. 612, 629 (1999); *see also Excalibur Fin. Servs., LP v. Ceruzzi*, No. X08CV960153343, 2003 WL 22903893, at *3 (Conn. Super. Ct. Nov. 19, 2003) ("Tender without acceptance does not discharge the maker of the promissory note."). At most, if Mr. Ade Bey actually did tender payment, and CitiFinancial did not have legitimate basis to refuse the tender, then interest would stop accruing on the debt. *See id.*; *cf. N.Y. Cent. Mut. Fire Ins. Co. v. Edwards*, No. 07-1267-bk,

2009 WL 230146, at *2 (2d Cir. Jan. 30, 2009) (summary order) (discussing how, under New York law, "tender of a check alone does not constitute payment.  Rather, payment is effected [o]nly when the drawee bank pays on the check.") (citation and quotation marks omitted).

The Court suspects, however, that the Mr. Ade Bey's proffered "bond" was not actually a legitimate tender; indeed, his references to the gold standard's suspension and beliefs about the illegitimacy of the very banking system that has facilitated his use of a Mercedes Benz automobile for the last four years lead the Court to believe that Mr. Ade Bey did not actually tender what the law recognizes as a legitimate form of payment.  *See Bryant*, 524 F. Supp. 2d at 760 ("[T]he legal authorities Plaintiff cites and the facts she alleges suggest that she did not tender payment, but rather a worthless piece of paper.").  The Amended Complaint's vague description of the allegedly-tendered payment as a "bond" or an "instrument," and that Mr. Ade Bey gave CitiFinancial just three days to return the "instrument" if it was defective, only heightens this possibility.  *See* Am. Compl. [doc. # 45] at 12.  Moreover, while Mr. Ade Bey alleges that he sent this "instrument" to CitiFinancial, he never alleges that he actually *paid* anything.  While this may be a picayune point in most situations, it appears crucial in the context of the "vapor money" arguments that Mr. Ade Bey makes.  *See, e.g.*, *Bryant*, 524 F. Supp. 2d at 759-61.  Thus, even assuming that CitiFinancial refused whatever "payment" that Mr. Ade Bey purported to offer, Mr. Ade Bey has not sufficiently pleaded that he actually tendered anything of value.  Accordingly, he has not pleaded a violation of Conn. Gen. Stat. § 42a-3-603(b), and Defendant's Motion to Dismiss [doc. # 48] Count Five is GRANTED.  *See Lex Assocs.*, 248 Conn. at 629 (1999); *Ceruzzi*, 2003 WL 22903893, at *3.

E.        **Remaining Claims (Counts Four and Six through Eight)**

Similarly, Mr. Ade Bey's remaining claims all fail to state a viable claim for relief; none require extended discussion.  Count Four alleges a violation of several provisions of the National Bank Act of 1864.  *See* Am. Compl. [doc. # 45] at 10-12.  In addition to dramatically misquoting provisions of the United States Code, Count Four fails to identify any provision of that actually permits Mr. Ade Bey to bring suit for alleged violations.  The provisions that Mr. Ade Bey purports to cite (some of which do not actually exist) do not provide him a private right of action, even assuming that CitiFinancial has violated the Act.  Therefore, these allegations fail to state a claim upon which the Court could grant relief, and Defendant's Motion to Dismiss [doc. # 48] Count Four is GRANTED.  *See Iqbal*, 129 S. Ct. at 1940-41; *Thiel*, 646 F. Supp. at 596.

Count Six purports to state a claim for a Fifth Amendment violation.  In his Objection to CitiFinancial's Motion to Dismiss, Mr. Ade Bey says that this claim is brought pursuant to 42 U.S.C. § 1983.  *See* Pl.'s Obj. [doc. # 56] at 16.  However, it is basic black-letter law that only state actors can be held liable for constitutional violations.  *See, e.g.*, *Rendell-Baker v. Kohn*, 457 U.S. 830, 835 (1982); *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 156 (1978).  Mr. Ade Bey argues in opposition to dismissal of this claim that "Plaintiff hereby states that CITIFINANCIAL AUTO is not a private citizen but instead an agent of the government."  Pl.'s Obj. [doc. # 56] at 16.  Mr. Ade Bey's conclusory and unsupported statement – nowhere alleged in the Amended Complaint – is insufficient to show state action for liability under § 1983.  Accordingly, CitiFinancial's Motion to Dismiss [doc. # 48] Count Six is GRANTED.

Count Seven alleges that CitiFinancial defamed RAYMOND MCLAUGHLIN by communication unidentified "derogatory statements" to credit reporting agencies.  *See* Am. Compl. [doc. # 45] at 13-14.  Even assuming that Mr. Ade Bey could assert this claim on behalf

of an entity such as RAYMOND MCLAUGHLIN, it is preempted by the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681(t)(b)(1)(F), s*ee generally Ryder v. Wash. Mut. Bank, FA.,* 371 F. Supp. 2d 152, 154-5 (D. Conn. 2005).  There is an exception to the FCRA's preemptive effect, *see* 15 U.S.C. § 1681h(e), but Mr. Ade Bey's conclusory allegations that CitiFinancial communicated "derogatory statements" are insufficient to invoke that exception, which would require him to establish "that (1) defendants furnished the credit information with 'malice or willful intent,' and (2) the information was false."  *Gorham-Dimaggio v. Countrywide Home Loans, Inc*., 592 F. Supp. 2d 283, 288 (N.D.N.Y. 2008) (quoting 15 U.S.C. 1681h(e)); *see also Ryder*, 371 F. Supp. 2d at 154-55.  Defendant's Motion to Dismiss [doc. # 45] Count Seven is therefore GRANTED.  *See Gorham-Dimaggio*, 592 F. Supp. 2d at 288.

Finally, Count Eight purports to set forth a violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692k.  *See* Am. Compl. [doc. # 45] at 14.  The problem here is that CitiFinancial is not a "debt collector" within the meaning of the FDCPA; the statute excludes from its definition of "debt collector" any creditor attempting to collect a debt on its own behalf. *See* 15 U.S.C. § 1692a(6)(a); *Book v. Mortg. Elec. Registration Sys*., 608 F. Supp. 2d 277, 284 (D. Conn. 2009); *Somin v. Total Cmty. Mgmt. Corp*., 494 F. Supp. 2d 153, 160 (E.D.N.Y. 2007). Since the Amended Complaint alleges that CitiFinancial's collection efforts were on its own behalf, this claim fails as a matter of law, *see Book*, 608 F. Supp. 2d at 284, and the Motion to Dismiss [doc. # 45] Count Eight is GRANTED.

## IV.     Conclusion

In summary, and as explained above, CitiFinancial's Motion to Dismiss [doc. # 48] all claims in the Amended Complaint [doc. # 45] is GRANTED.  Additionally, in the light of the

foregoing, Mr. Ade Bey's Motion to Compel [doc. # 58] and his Demand for Verification of Debt [doc. # 64] are DENIED as moot, as is CitiFinancial's Motion to Strike [doc. # 63].

As in his other case, the Court has carefully considered whether to sanction Mr. Ade Bey for bringing what appears to be a patently frivolous lawsuit – much less whether he ought to be afforded an opportunity to amend his complaint one last time.  The Court will not repeat that discussion here, but suffice it to say that it is with considerable reluctance that Mr. Ade Bey will be granted one additional opportunity to amend his complaint to state a plausible and legally-cognizable claim for relief.  *See generally Shakir Ra Ade Bey v. CitiMortgage*, No. 3:09CV1762(MRK) (D. Conn. June 11, 2010) at 31-35.

However, as is true in his case against CitiMortgage, this opportunity comes with some important conditions.  First, if Mr. Ade Bey chooses to file a second amended complaint, he must do so no later than **July 2, 2010**, and it must be accompanied by a Motion to Amend.  If Mr. Ade has not filed a second amended complaint by that date, his claims will be dismissed with prejudice, and the Court will decline supplemental jurisdiction over CitiFinancial's counterclaim, which it would then be free to file in state court.  Second, if Mr. Ade Bey chooses to amend his complaint, he may not rely on the "Redemptionist," "vapor money," or the "unlawful money" theories, as explained in the Court's opinion dated June 11, 2010 filed in his case against CitiMortgage.  *See id.*  Mr. Ade Bey is hereby warned that the failure to adhere to these conditions will result in the summary dismissal of his case, with prejudice, and the very real possibility that he will be required to pay the attorneys' fees CitiFinancial has had to expend to date defending this case.  Given the severity of these possible sanctions, the Court urges Mr. Ade Bey to carefully consider whether it is in is best interests to continue this litigation.

IT IS SO ORDERED.


/s/  Mark R. Kravitz
United States District Judge


Dated at New Haven, Connecticut: **June 11, 2010.**